**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 23-6183** |
| **TIDEWATER LANDFILL LLC, ET AL** | **SECTION: "B"(5)** |

**AND**

| | |
|---|---|
| **IN RE: LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY** | **CIVIL ACTION** **NO: 25-936** **SECTION: "B"(5)** |

**<u>ORDER AND REASONS</u>**

Before the court are the motion for leave to appeal certain orders from Bankruptcy Court by Louisiana Fruit Company ("LFC"; Rec. Doc. 33), a response in opposition to the latter motion by Ironshore Specialty Insurance Company, AIG Specialty Insurance Company, Aspen Specialty Insurance Company, and The Gray Insurance Company (collectively, "Insurers"; Rec. Doc. 34), and transcripts from related proceedings in the Bankruptcy Court held in March and April of 2025 filed by LFC, per court order (Rec. Doc. 36).

Additionally, while the motion for appeal was pending, the Bankruptcy Court on September 8, 2025 transmitted to the Clerk of this court the complete record on appeal. The latter transmittal was docketed in this court as *In re: Louisiana Department of Environmental Quality*, 2:25-cv-00936-ILRL-MBN. Rec. Doc. 8. In response to the latter transmittal and the previously filed notice of appeal, the Clerk of Court for the Eastern District of Louisiana issued a scheduling order with briefing deadlines. Rec. Doc. 9. Therefore, also under consideration are all briefs filed by parties in the latter action, i.e. original and reply briefs by LFC as appellant, Rec. Docs. 10, 13;

1

joint brief by Insurers as appellees, Rec. Doc. 11; and joint brief by Chapter 7 Trustees as appellees Rec. Doc. 12.

For reasons provided below,

**IT IS ORDERED** that LFC's opposed motion for leave to appeal (Rec. Doc. 33) is **DENIED**.

Alternatively, if leave to appeal had been granted, the following would issue, **IT IS FURTHER ORDERED** that the subject orders of the Bankruptcy Court are **AFFIRMED**, and the appeal is thereby **DISMISSED**. *See* EDLA CA # 25-00936 (hereinafter "APL").

## I.   BACKGROUND

The instant matter arises from an environmental enforcement litigation initiated by Louisiana Department of Environmental Quality ("LDEQ") concerning a landfill on property owned by LFC in Plaquemines Parish, Louisiana. On October 12, 2018, LDEQ filed the Petition for Mandatory Injunction in Louisiana state court against operators of the landfill, Tidewater Landfill, LLC ("Tidewater") and Environmental Operators (collectively, the "Debtors"), as well as Louisiana Fruit Company ("LFC") as property owners, and several insurers. *See* Bkry. Adversary Proceeding No. 24-1011, ECF Doc. 2. LDEQ alleged mismanagement and improper operation of the landfill and sought to close the facility and recover damages under Louisiana Civil Code article 667. *Id*. On various dates in 2019, and again in September 2023, LDEQ amended its petition to add additional insurer defendants, the owners of Debtor entities and several entities they control (the "Guidry Defendants"). *Id*.[1]

A motion for summary judgment was filed by LFC in the Bankruptcy Court to determine indemnity obligations for claims and potential liabilities under a Land Agreement (Bankruptcy

---

[1] The matter was removed to the United States Bankruptcy Court, Eastern District of Louisiana, due to the Debtors filing for bankruptcy relief under chapter 7 of the Bankruptcy Code.

Court, Rec. Doc. 93). The Bankruptcy Court denied summary judgment on the basis that it was

"premature" to determine the Land Agreement's insurance and indemnity obligations because

liability had not been determined. (Bankruptcy Court, Rec. Doc. 126). LFC moved for rehearing

(Bankruptcy Court, Rec. Doc. 131), and the motion for reconsideration was denied. (Bankruptcy

Court, Rec. Doc. 137).

> The "indemnity, defend, and insure" provision for the Land Agreement states:
>
> "The Operators [Debtor – Tidewater Landfill, LLC] hereby indemnify, hold harmless and agree to defend LFC from any and all claims or liability resulting from the operations of the Operators on the First Landfill and the Second Landfill. The Operators agree to maintain general liability insurance covering both personal injury and property damage in the minimum amount of $300,000.00 per occurrence and to have LFC named an additional insured under any such policy."[2]

*See* LTA, Rec. Doc. 33-2, p. 2; and APL, Rec. Doc. 10, pp. 11-12.

Citing 28 U.S.C. § 158(a)(3) and the Federal Rules of Bankruptcy Procedure 8001 and

8004, LFC filed the motion for leave to appeal from the March 13, 2025 Order of the Bankruptcy

Court (Bankruptcy Court, Rec. Doc. 126), and the subsequent April 22, 2025 Order of the

Bankruptcy Court denying reconsideration of latter order (Bankruptcy Court, Rec. Doc. 137).

In denying LFC's summary judgment ruling, the Bankruptcy Judge stated:

> "So it would be an advisory opinion if I were to define the rights between the two parties on the one side of the "V" with, without regard to what's going on the other side of the "V" where LDEQ sits. It's just premature. That's all, okay? So I'm going to deny it as premature. You're more than welcome to reurge it at any time as we go along, okay?"

See LTA, Rec. Doc. 36-1 at p. 26 – 3/12/25 Hearing Transcript.

Reconsideration of the latter ruling under FRCP 59 (e) was denied. Id., Rec. Doc. 36-2 at

p. 20 – April 16, 2025 Hearing Transcript. The Bankruptcy Judge stated:

---

[2] LFC asserted a Crossclaim in the civil litigation and a claim in the bankruptcy proceedings (Case No. 20-11646, 20-11648) against Tidewater seeking both a full defense and, if necessary, to be indemnified against any liability arising out of Debtor's operations of the landfill.

3

"I stand by my interpretation of *Bennett*[3] and the procedural posture in some of the other cases that I read is different from that here in that, again, we're dealing with LDEQ on one side. And then LDEQ is -- and you made a comment that you're, whatever liability you [LFC] possess, the client possesses is derivative of Tidewater and Environmental Operators. I'm not sure that that's what LDEQ has alleged. I think LDEQ has alleged that you [LFC has] have your own liability, your own standalone liability, and then the other two defendants, Tidewater and Environmental Operators, have their own liability.

…

I don't think that we've got any intervening change in controlling law and the availability of new evidence not previously available isn't applicable here. I'm going to deny the motion to reconsider."

*See id*. Rec. Doc. 36-2 at pp. 19-20.

## II.   ANALYSIS

Under 28 U.S.C. § 158, district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court, as well as interlocutory orders and decrees from which the district court has granted leave to appeal. *In re Tullius*, 500 F. App'x 286, 288 (5th Cir. 2012).  Because § 158(a)(3) does not provide the standard for the district court's determination on whether to grant leave to appeal, federal courts have looked to the standards set forth in 28 U.S.C. § 1292(b).  *In re Turner*, CA # 96-1102, 1996 WL 162110, at *1 (E.D. La. Apr. 3, 1996) (citing *Matter of Ichinose*, 946 F. 2d 1169, 1176 (5th Cir. 1991)).

We are thereby tasked to determine existence of the following grounds under § 1292(b) for allowing the appeal from subject interlocutory orders:

1. A controlling issue of law; and
2. A question where there is substantial ground for difference of opinion; and
3. An immediate appeal must materially advance the ultimate termination of the litigation.

---

[3] *Bennett v. DEMCO Energy Services, LLC*, 386 So 3d 270, 276-277 (La. 2024)

4

*Matter of Ichinose*, 946 F. 2d at 1177. The foregoing grounds must be met for the interlocutory appeal to move forward, without being weighed or balanced. *Panda Energy Int'l, Inc. v. Factory Mut. Ins.*, 3:10–CV–003–K, 2011 WL 610016, at *4 (N.D. Tex. 2011) (citing *Ahrenholz v. Bd. of Tr. of Univ. Of Ill.*, 219 F. 3d 674, 676 (7th Cir. 2000)). Further, "[l]eave to appeal a bankruptcy court's interlocutory order should be granted only in circumstances which justify overriding the general policy of not allowing such appeals." *Powers v. Montgomery*, CIV. A. 3:97-CV-1736-P, 1998 WL 159944, at *2 (N.D. Tex. Apr. 1, 1998); *In re Global Marine, Inc.*, 108 B.R. 1007, 1009 (S.D. Tex. 1988) (Whether "exceptional circumstances" warrant a grant of immediate appellate review.); *see also Clark–Dietz & Assoc. v. Basic Construction*, 702 F. 2d 67, 69 (5th Cir. 1983).

Unfortunately for LFC, the controlling precedent on indemnity agreements, as here, negates allowance of this appeal under § 1292(b). As discussed below, our review has not found substantial ground for difference of opinion on the controlling law; nor would an immediate appeal likely materially advance the ultimate resolution of the case; and exceptional circumstances warranting leave to appeal are also non-existent. The Bankruptcy Judge has carefully considered the issues and correctly found that the LFC has a right to assert indemnity issues. The decision to defer ruling on entitlement to indemnification and defense is not a final appealable order. *Cf. In re Reilly-Benton Co., Inc.*, No. CV 22-3731, 2022 WL 16683257, at *3 (E.D. La. Nov. 3, 2022) (A controlling issue of law has the potential to affect the course of the litigation when "reversal of the bankruptcy court's decision would result in dismissal of the action." Citing *Dorsey v. Navient Sols., Inc.,* 2015 WL 6442572, at *2 (E.D. La. Oct. 23, 2015). Moreover, "an issue is not seen as controlling if its resolution on appeal would have little or no effect on subsequent proceedings." *In re Cent. La. Grain Co-op., Inc.*, 489 B.R. at 411 (quoting *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006). *In re Reilly-Benton Co., Inc.,* 2022 WL 16683257, at *3.

5

Further, "[i]t is well settled in Louisiana jurisprudence that a contractual indemnity agreement will not be construed to require the indemnitor to indemnify the indemnitee for the indemnitee's own negligence." *Morella v. Bd. of Comm'rs of Port of New Orleans*, 2004-0312, p. 12 (La. App. 4 Cir. 10/27/04), 888 So.2d 321, 327. Rather, an indemnity agreement is only construed to indemnify an indemnitee against losses resulting to him through his own negligent act if that intention was expressed in unequivocal terms. *Id.* (quoting *Polozola v. Garlock, Inc.*, 343 So.2d 1000, 1003 (La. 1977)). For example, in *Polozola*, the subject "agreement state[d] that National Maintenance will indemnify Dow, its agents, servants or employees against claims made by National Maintenance or its subcontractors, agents, servants or employees because of injury '*whether caused by Dow's negligence or otherwise*.'" 343 So.2d at 1002 (emphasis added). The Louisiana Supreme Court held this language established the agreement required National Maintenance to indemnify Dow employees against losses resulting to them through their own negligence. *Id.*, 343 So.2d at 1003.

LFC's reliance upon *Bennett v. DEMCO Energy Services, LLC*, 386 So 3d 270 (La. 2024) is misplaced. In that case, the Louisiana Supreme Court stated:

> "…, **asserting** a claim for indemnity, arising out of the same facts and circumstances, is not premature before a judicial finding of liability. The right to collect on an indemnity agreement is determined upon judgment or finding of liability or loss, but there is **no prohibition on <u>asserting</u> a claim for indemnity in the same proceeding**. Again, <u>to require a party **to file** a separate indemnification action after a finding of liability runs afoul of our well-established principles of judicial efficiency</u>." Emphasis added.

*Bennett* was further examined in *Anderson v. Briggs*, 2023-0814 (La. App. 4 Cir. 4/25/25), 414 So. 3d 990. The concept of indemnity stems from the general obligation to repair the damage caused by one's fault under La. C.C. art. 2315 - citing *Bennett*, 2023-01358, p. 3, 386 So.3d at 273 to distinguish between the right to **claim** indemnity and defense and the right to collect same, and limitation of those rights by clear contractual terms. *Anderson*, 414 So. 3d at 1002–03. Emphasis

added.  Unlike LFC's interpretation of the right to claim or assert its indemnity claim, *Bennett* did not interpret such right to include an ultimate determination of entitlement when there are outstanding factual disputes over liability issues between the indemnitor and indemnitee.  Absent also from the Bennett case was any question about ambiguity in the indemnity agreement.  The right of action under the latter circumstance does not include a right to collect losses arising from one's own fault, if any, due to the ambiguous nature of the instant agreement.

LSA-C.C. Art. 1805 (Enforcement of contribution) sets forth the mechanism for bringing a claim against a solidary co-obligor for contribution.  "A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third-party defendant according to the rules of procedure, whether or not that third-party defendant has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff." Id.  That right of action is said to be the source of indemnification, and '[s]ubrogation takes place by operation of law ... [i]n favor of an obligor **who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment**.' LSA-C.C. art. 1829(3); [internal citation omitted] (Emphasis added).  *Bennett,* 386 So. 3d at 276 (citing *Reggio v. E.T.I., et al.*, 07-1433 (La. 12/12/08), 15 So. 3d 951, 960-61.

In following the indemnity principles set forth in *Bennett* and *Morella*, the Louisiana Fourth Circuit court stated "The trial court should have deferred its determination of the import of the indemnity provision between Admiral and Ports America until after the jury made its liability determination…. *See Suire v. Lafayette City-Par. Consol. Gov.*, 2004-1459, 1460, 1466, pp. 17-18 (La. 4/12/05), 907 So.2d 37, 51 (holding the Louisiana Third Circuit Court of appeal erred in finding "a duty to defend, or pay for defense costs, under the terms of the contractual indemnity

provision" because the "lawsuit [was] still pending, and no determination of liability ha[d] been made," such that the claim for defense and indemnity needed to be "defer[red] ... until the lawsuit ... concluded and liability [was] determined"). *Cf. Bollinger Marine Fabricators, LLC v. Marine Travelift, Inc.*, 2015 WL 4937839, at *4 (E.D. La. 2015) (holding the plaintiff's claim for fees and expenses was not premature because "there [was] no dispute that the underlying lawsuit ... concluded and that [the plaintiff] ... incurred defense costs" during it).[4] *Anderson v. Briggs*, 2023-0814 (La. App. 4 Cir. 4/25/25), 414 So. 3d 990, 1005.

In reliance upon *Bennett*, the Louisiana Fourth Circuit in *Riggio v. Ports Am. Louisiana, LLC,* 407 So.3d 636, 644 (La. App. 4 Cir. 12/5/24) stated "[a]lthough it was not premature for Ports [Indemnitee] to file its third-party demands before … judicial determination was made, it was premature for the trial court to rule on those demands. *See Bennett*, 23-01358, pp. 8-9, 386 So.3d at 276.  Here, the current record does not present a justiciable issue for resolution on the scope of an ambiguous indemnity agreement.

There is nothing in the indemnity provision between LFC and Debtors that unequivocally states that LFC will be indemnified for its own negligence. The subject indemnification agreement stated Operators (Debtors here) would "indemnify, hold harmless and agree to defend LFC from any and all claims or liability resulting from the operations of the Operators [Debrors] on the First Landfill and the Second Landfill." *See* LTA, Rec. Doc. 33-2, p. 2; and APL, Rec. Doc. 10, pp. 11-12.

---

[4] In a distinguishable settlement context and basis for review, see *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc*, 951 F.3d 219, 225–26 (5th Cir. 2020) ("As a general rule, one seeking indemnity for a settlement must show actual liability to recover." *Sullivan v. Franicevich*, 899 So. 2d 602, 609 (La. App. 4th Cir.), *cert. denied*, 902 So. 2d 1051 (La. 2005). "An exception to the rule is that the indemnitee need show only potential, rather than actual, liability ... where the claim is based on a written contract. ..." *Vaughn v. Franklin*, 785 So. 2d 79, 87 (La. App. 1st Cir.), *cert. denied*, 798 So. 2d 969 (La. 2001). An indemnitee also need show only potential liability if "the defendant tenders the defense of the action to the indemnitor." *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1216–17 (5th Cir. 1986). Those propositions are supported by the overwhelming weight of Louisiana and Fifth Circuit authority.

Considering the instant indemnity agreement in accordance with the above-stated authorities, we find it did not constitute an agreement by which Debtors would indemnify LFC against losses resulting from LFC's own negligence because the indemnification provision contained no unequivocal intention to that effect. A party cannot be indemnified for its own negligence absent an unmistakable, unambiguous and explicit statement within the four corners of the contract that such is the intent of the parties. As found earlier, there is no clear expression of an intent to indemnify LFC against its own negligence. However, Debtors would be required to indemnify LFC against losses resulting from Debtors' own negligence.

Accordingly, the Bankruptcy Court's rulings at issue are not appealable orders; alternatively, if they were appealable, we find no reversible error and affirm that Court's orders.

New Orleans, Louisiana this 24th day of March 2026

SENIOR UNITED STATES DISTRICT JUDGE